IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34514-9-III |
| Respondent, | ) | |
| v. | ) | |
| JUSTIN ALLEN DUNLAP, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |

SIDDOWAY, J. — Justin Dunlap appeals his conviction for violation of a protective order, arguing that his rule-based speedy trial right was violated and the conviction should be dismissed with prejudice. In a pro se statement of additional grounds, he contends that his sentence exceeds the statutory maximum and that his trial lawyer provided ineffective assistance by failing to request an exceptional mitigated sentence under RCW 9.94A.535(1)(a) on the basis that the victim, Mr. Dunlap's wife, was a willing participant in the violation.

Mr. Dunlap's rights under CrR 3.3 were not violated. But the State concedes that Mr. Dunlap's sentence exceeds the statutory maximum and agrees to remand for a full resentencing at which Mr. Dunlap's lawyer will have the opportunity to request an

exceptional sentence. We affirm the conviction, accept the State's concession on the sentence-related issues, and remand.

### FACTS AND PROCEDURAL BACKGROUND

Justin Dunlap has been in and out of jail over the years and as an ex-felon, could not legally reside in the federally-subsidized Ellensburg apartment where his wife lived with their son. Despite that, and despite a protection order that prohibited him from contacting his wife, Mr. Dunlap has returned to Ellensburg and lived with his wife when not in custody. He has kept his personal belongings there and he had a key to the apartment.

In March 2016, after leaving Ellensburg for court matters on the west side of the state, Mr. Dunlap hitchhiked home, arriving on March 15. Upon entering the apartment, he proceeded to the bedroom, where he saw a man, penis exposed, standing over Mr. Dunlap's sleeping wife and child. Later explaining that he "instinctively" acted to "protect [his] family," Mr. Dunlap opened a nearby closet and grabbed a crowbar. Report of Proceedings (RP) at 231. His wife awakened and, crying and apologizing, pushed her husband out into the hallway. But the visitor, who turned out to be a guest and coworker of Ms. Dunlap, charged Mr. Dunlap. A fight ensued that ended with Mr. Dunlap unconscious and Ms. Dunlap demanding that her guest leave.

The guest left, but called police. By the time police arrived at the apartment, Mr. Dunlap was gone.

2

Mr. Dunlap was charged with one count of first degree burglary (domestic violence), one count of second degree assault on the male guest, one count of fourth degree assault (domestic violence) for pushing Ms. Dunlap against the wall, and one count of third degree malicious mischief (domestic violence) for damage to a picture knocked off the wall and to a door and kitchen drawer he damaged before leaving the apartment.

On Monday, May 16, 2016, the day before Mr. Dunlap's scheduled trial, his lawyer told the court she learned the prior Friday that the State would be moving to amend the information to add one count of tampering with a witness and one count of violation of a protection order (domestic violence), and she was not ready for trial of the new charges. The new charges were based on a call Mr. Dunlap made to his mother-in-law from jail a week earlier, allegedly trying to influence his wife's trial testimony. The State contended that the recorded call captured Ms. Dunlap yelling to him from the background that she loved him, further proving the unlawful contact. Mr. Dunlap's lawyer told the court she was ready to proceed with trial on the original charges but needed a continuance to interview witnesses if the charges were amended.

Despite a long colloquy about the work that remained to be done to defend against the new charges and how the charges substantially increased Mr. Dunlap's potential sentence, Mr. Dunlap told the court he wanted to proceed to trial as scheduled. Over Mr. Dunlap's objection, and knowing it would delay trial beyond the time provided by CrR

3

3.3(b), the court granted a one-week continuance. It explained to Mr. Dunlap that his constitutional right to a speedy trial was not implicated, only a court rule-based right that it had to balance against his adequate representation. It pointed out that "a one week delay is not a very big imposition" when balanced against the two-and-a-half-year increase in his potential sentence. RP at 55.

The jury found Mr. Dunlap guilty of violating a protection order but acquitted him of the witness tampering and fourth-degree assault charges. It deadlocked on the charges of first degree burglary and second degree assault. The trial court declared a mistrial on those charges.

At sentencing, Mr. Dunlap's lawyer told the court that both Ms. and Mr. Dunlap were asking the court to vacate the protection order. The trial court read a letter from Ms. Dunlap in which she asked for leniency for her husband, stating that he had "drastically c[ome a long] way for the good" (although "ha[ving] a ways to go"), that she was trying to keep her family together, and that her son was "truly the only victim in this matter." Clerk's Papers at 267-68.

The trial court vacated the protection order, sentenced Mr. Dunlap to 60 months' incarceration, and imposed 12 months' community custody. Mr. Dunlap appeals.

ANALYSIS

The continuance granted by the trial court resulted in Mr. Dunlap's trial beginning 64 days after he was arraigned, during which he remained in custody. CrR 3.3(b)(1) generally requires the State to bring a defendant detained in jail to trial within 60 days of his or her arraignment. Mr. Dunlap concedes that the trial court has the discretion to continue the trial date when a continuance is requested before the time for trial has expired, is required in the administration of justice, and the defendant will not be prejudiced in the presentation of his or her defense. CrR 3.3(f)(2).[1] He argues, however, that when the State seeks to amend charges inexcusably late, compelling the defense to seek a continuance, courts should refuse to exclude the continuance delay in calculating the time to trial under CrR 3.3(b). Br. of Appellant at 6-7 (citing *State v. Price*, 94 Wn.2d 810, 814, 620 P.2d 994 (1980)). A trial court's grant of a motion for continuance is

---

[1] In objecting to the continuance requested by his trial lawyer, Mr. Dunlap personally asserted a constitutional right, but he assigns error on appeal to a violation of only his rule-based speedy trial right. "The threshold for a constitutional violation is much higher than that for a violation of the superior court rules." *State v. Fladebo*, 113 Wn.2d 388, 393, 779 P.2d 707 (1989). The fact-specific analysis of whether constitutional speedy trial rights are violated begins with a determination of whether the amount of delay is presumptively prejudicial. *State v. Iniguez*, 167 Wn.2d 273, 290-91, 217 P.3d 768 (2009). While our Supreme Court has eschewed any "formulaic presumption of prejudice upon the passing of a certain period of time," *id.* at 292, we found no reported Washington decision that has found a delay of less than eight months to be presumptively prejudicial.

5

reviewed for manifest abuse of discretion. *State v. Brown*, 40 Wn. App. 91, 94-95, 697

P.2d 583 (1985).

> In *Price*, our Supreme Court held that

> if the State inexcusably fails to act with due diligence, and material facts
> are thereby not disclosed to defendant until shortly before a crucial stage
> in the litigation process, it is possible either a defendant's right to a speedy
> trial, or his right to be represented by counsel who has had sufficient
> opportunity to adequately prepare a material part of his defense, may be
> impermissibly prejudiced. Such unexcused conduct by the State cannot
> force a defendant to choose between these rights.

94 Wn.2d at 814. It held that the appellant had not shown an inexcusable failure of the

State to act with due diligence in that case.

Mr. Dunlap likens his case to *State v. Ralph Vernon G.*, 90 Wn. App. 16, 950 P.2d

971 (1998), in which an inexcusable failure to act with diligence *was* shown, and charges

were dismissed with prejudice on appeal. There, the State waited until the day before

trial to move for leave to add new charges of sexual abuse and additional victims despite

being aware of the underlying facts for a month. *Id.* at 18.

In this case, the phone call that was the basis for new charges against Mr. Dunlap

took place on a Monday and the State gave notice to the defense four days later, on

Friday, of its intention to seek to amend. The inexcusable failure to act with due

diligence required by *Price* is not shown. Moreover, as the State points out, the trial

began within the five day cure period the superior court may grant upon motion even

after the time for trial has expired. *See* CrR 3.3(g) (providing a single opportunity to cure

6

No. 34514-9-III
*State v. Dunlap*

what would otherwise be a violation of the rule). The trial court did not abuse its discretion.

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds for review (SAG), Mr. Dunlap raises two. We requested a response to the SAG from the State.

Mr. Dunlap first contends the trial court erred when it imposed a sentence that exceeded the 5-year statutory maximum by imposing 60 months' incarceration plus 12 months' community custody. Violation of a protection order is a class C felony. RCW 26.50.110(4). The maximum sentence for a class C felony in Washington is 60 months. RCW 9A.20.021(c). The State concedes the error and asks that we remand the case for resentencing. *See* RCW 9.94A.701(9) (requiring reduction of the term of community custody when the combination of confinement and community custody exceeds the maximum).

The second ground raised by Mr. Dunlap is that his trial lawyer provided ineffective assistance by failing to request an exceptional sentence on the basis of RCW 9.94A.535(1)(a), which identifies as a mitigating factor that the victim (here, Ms. Dunlap) was a willing participant in the incident. The State, having agreed to remand for a full resentencing, responds that Mr. Dunlap will be free to request an exceptional mitigated sentence. We agree.

7

No. 34514-9-III
*State v. Dunlap*

We affirm Mr. Dunlap's conviction and remand for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Pennell, J.